IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

JESSICA BRADBURN,

    *Plaintiff*,

v.

LIFE INSURANCE COMPANY OF NORTH AMERICA,

    *Defendant*.

## COMPLAINT

Plaintiff Jessica Bradburn, by and through her counsel of record, McDermott Law, LLC, for her Complaint against Defendant Life Insurance Company of North America, states and alleges as follows:

### I. PARTIES, JURISDICTION AND VENUE

1. This is an action arising under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et. seq.*

2. Plaintiff Jessica Bradburn ("Plaintiff" or "Ms. Bradburn"), at all times pertinent hereto, was and is a resident and domiciliary of the State of Colorado.

3. Prior to becoming disabled, Ms. Bradburn worked as a Subcontract Technical Specialist Coordinator–Team Lead for Bechtel Global Corp.

4. By virtue of her employment, Ms. Bradburn was a "participant" in and "beneficiary" of the Bechtel Long-Term Disability Plan ("Plan") as those terms are defined by 29 U.S.C. § 1002(7) and (8).

5. The Plan is an "employee benefit plan" as that term is defined by 29 U.S.C. § 1002(3).

6. As part of the Plan, employee participants were guaranteed certain long-term disability ("LTD") income replacement benefits if they became disabled as defined by the Policy.

7. Life Insurance Company of North America ("Defendant" or "LINA") administers the LTD portion of the Plan.

8. The Plan's LTD benefits were funded by Group Long Term Disability Insurance Policy number LK-007551 ("Policy").

9. Upon information and belief, LINA is the designated claim administrator for the Plan regarding claims for benefits under the Policy.

10. LINA is a subsidiary company of Cigna Group Insurance.

11. Defendant LINA is a Pennsylvania insurance company, organized and existing under the laws of the State of Pennsylvania, with its principal place of business and headquarters in Philadelphia, Pennsylvania.

12. LINA is registered with the Colorado Division of Insurance and conducts the business of insurance in the State of Colorado.

13. The Court has subject matter jurisdiction over the action under 28 U.S.C. 1331 and 29 U.S.C. §§ 1132(e) and (f).

14. This Court has personal jurisdiction over the Defendant.

15. Venue is proper in the United States District Court for the District of Colorado under 28 U.S.C. § 1391(a) & (b) and 29 U.S.C. § 1132(e)(2).

## II.     GENERAL ALLEGATIONS

**A.     The LTD Policy**

16. Under the LTD Policy, LINA promised that if Ms. Bradburn became Disabled while the Policy was in effect, LINA would pay 60% of Ms. Bradburn's monthly Covered Earnings rounded to the nearest dollar, or the Maximum Disability.

17. The LTD Policy defines "disabled" as is applicable to Ms. Bradburn's claim to mean:

The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is either:

1. unable to perform all the material duties of his or her Regular Occupation or a Qualified Alternative; or
2. unable to earn 80% or more of his or her Indexed Covered Earnings.

After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is either:

1. unable to perform all the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; or
2. unable to earn 80% or more of his or her Indexed Covered Earnings.

18. LINA was responsible for investigating and evaluating claims for benefits and appeals and made all determinations regarding Plaintiff's eligibility for and entitlement to benefits under the Policy.

19. LINA was required to ensure that all benefit determinations under the Policy were reasonable and based on the terms of the Plan and the facts and circumstances of each claim.

20. LINA, as the insurer and underwriter of the Policy, is solely liable for the payment of benefits on all approved claims and, if a claim is approved, must pay those benefits from its own funds.

B. **Cigna's Approval of STD Benefits Under the Regular Occupation Definition of Disability**

21. Ms. Bradburn's medical history is most significant for, among other conditions, a large left subarticular and left paracentral disk extrusion, severe spinal canal stenosis, neuroforaminal stenosis, cervicalgia., chronic pain syndrome, uncontrollable bowel and bladder incontinence, and foot drop.

22. On March 8, 2016, Ms. Bradburn ceased working at Bechtel Global Corp. due to the culmination of her disabling medical conditions.

3

23. Ms. Bradburn submitted a claim for short-term disability ("STD") benefits, which was approved by LINA under the Regular Occupation definition of disability and was fully paid through the maximum STD benefit period of September 6, 2016.

## C. Cigna's Approval and Subsequent Denial of LTD Benefits under the Regular Occupation Definition of Disability

24. On September 19, 2016, LINA's Nurse Case Manager ("NCM") recommended that LINA transition Ms. Bradburn's claim from STD to LTD.

25. By letter dated October 4, 2016, LINA notified Ms. Bradburn her claim for LTD benefits had been approved.

26. Ms. Bradburn received LTD benefits retroactive to September 5, 2016.

27. By letter dated March 1, 2018, LINA indicated it was conducting an evaluation to determine Ms. Bradburn's eligibility beyond September 5, 2018, which was when her policy's definition of disability changed to any occupation.

28. By letter dated May 10, 2018, LINA notified Ms. Bradburn it had completed its any occupation review and was terminating her benefits. In this letter, LINA explained, "[a]s you no longer meet the definition of Disability as defined by your employer's policy, final benefits will be payable through May 10, 2018 upon receipt of your final part-time earnings stub issued to you between May 5, 2018 and May 10, 2018."

29. In full compliance with 29 U.S.C. § 1133, and with the assistance of undersigned counsel, Ms. Bradburn submitted to LINA a timely internal appeal of the adverse benefit determination on December 7, 2018.

30. On January 31, 2019, faced with overwhelming evidence supporting the claim, LINA approved the claim and began once again paying LTD benefits. This approval however was based **only** upon the own occupation of disability definition and LINA was immediately to undertake an

4

investigation of Ms. Bradburn's ability to perform the duties of any occupation as defined under the policy.

**D.    Cigna's Denial of LTD Benefits under the Any Occupation Definition of Disability**

31.    On February 1, 2019, LINA began reviewing Ms. Bradburn's claim to determine whether she would satisfy the "any occupation" definition of disability as of September 5, 2018.

32.    On February 14, 2019, LINA requested Ms. Bradburn attend an Independent Medical Examination ("IME"). In response to LINA's request, Ms. Bradburn submitted to LINA several questions and concerns regarding both LINA's "any occ" review and its request for an IME.

33.    By letter dated February 26, 2019, LINA responded, not by answering Ms. Bradburn's questions, but by merely setting the examination.

34.    On March 15, 2019, LINA sent a letter "confirming" that Ms. Bradburn would appear for the examination.

35.    By letter dated March 19, 2019, Ms. Bradburn once again requested LINA's cooperation by responding to certain requests regarding the IME (to ensure its fairness and accuracy) prior to agreeing to attend.

36.    By letter dated March 20, 2019, Ms. Bradburn again requested clarification as to the necessity of the IME.

37.    That same date, LINA responded by letter stating, "[y]our previous requests for the terms of the Independent Medical Examination (IME) for your client have been addressed to our fullest capability in our letter dated February 26, 2019.  The appointment has been scheduled for April 18, 2019 and will remain in place under the assumption that Ms. Bradburn will attend unless we are notified otherwise by March 22, 2019."

38.    By letter dated March 22, 2019, Ms. Bradburn agreed to attend an IME, but needed to reschedule the date.

39. Receiving no response, Ms. Bradburn followed up with another letter on March 29, 2019. By letter dated April 1, 2019, LINA rescheduled the IME to May 1, 2019.

40. When Ms. Bradburn arrived for her the examination, she learned for the first time that Dr. Larson (the IME examiner retained by LINA) refused to comply with nearly all of the reasonable conditions we requested for the examination.

41. Although Ms. Bradburn's exam was scheduled for 1:00 p.m., she wasn't taken to an exam room until nearly 1:30. Then, she was left to sit in the exam room by herself for over ten minutes. When Dr. Larson finally showed up to the exam room (almost an hour after the time scheduled for the exam), he refused to allow Ms. Bradburn to record the examination by either video or audio means. According to Dr. Larson, video and audio recordings "do not accurately capture the exam." Yet, despite this assertion, he offered to record it himself (severely undermining his argument for not permitting Ms. Bradburn to do the recording). But, when Ms. Bradburn stated that she would want a copy of his recording, he refused to allow that and unilaterally cancelled the examination. In total, Dr. Larson spent less than five minutes with Ms. Bradburn.

42. The very next day, by letter dated May 2, 2019, LINA terminated Ms. Bradburn's claim stating among other reasons, "[w]e received notice from the vendor on May 2, 2019 stating that the you left the IME without following through with the exam because you were advised that videotaping was against the examiner's office's policy. The examiner offered to record the exam by audio or to have his medical assistant chaperone, but you declined both options. Because you failed to cooperate in the administration of your claim, we proceeded with our review with the information on file."

43. Before appearing for the IME, Ms. Bradburn requested permission to record the exam. LINA never told her that recording would not be permitted, and she had every reason to believe that recording the exam would be permitted to preserve the integrity of the examination.

44. Once again, in full compliance with 29 U.S.C. § 1133, and with the assistance of undersigned counsel, Ms. Bradburn submitted another timely formal appeal of the adverse benefit determination to LINA on October 23, 2019 submitting extensive evidence of a covered disability.

45. Just six days later, on October 29, 2019, LINA advised Ms. Bradburn it was in receipt of her appeal and would require a 45-day extension of time to render an appeal decision in order to conduct a medical review.

46. By letter dated November 5, 2019, undersigned counsel objected to this attempt to request an extension as being improper. LINA did not respond to this letter.

47. By letter dated November 25, 2019, LINA again informed Ms. Bradburn that it would need additional time to decide the claim, because it needed to complete a medical review.

48. By letter dated December 5, 2019, Ms. Bradburn again noted her objections and requested clarification as to why the extension was necessary and requested certain information regarding LINA's retained medical reviewers.

49. By letter dated December 14, 2019, LINA provided questions to Ms. Bradburn's treatment provider from its medical reviewer regarding Ms. Bradburn's restrictions. In doing so, LINA informed Ms. Bradburn that "the period of time from the date we request information to the date we receive information may not count toward the mandated appeal resolution time frames stated above."

50. By letter dated January 28, 2020—three months after receiving Ms. Bradburn's appeal—LINA advised it was awaiting responses to the medical reviewers questions. In that same letter, LINA misrepresented that "[a] final decision will be made no later than 45 days from receipt of your initial request for an appeal, with an additional 45 day extension allowed if necessary and due to good cause."

51. On January 31, 2020, Ms. Bradburn provided a response from her treating medical provider, Dr. Mark Meyer, to LINA's medical reviewers' questions. Dr. Meyers response should have

7

left no doubt that Ms. Bradburn is unable to return to any occupation. By letter of that same date, Ms. Bradburn also requested LINA to provide clarification of her contractual limitation provision filing deadline with regard to her LTD claim.

52. By February 18, 2020, when no response was received from LINA, Ms. Bradburn requested the status of LINA's appeal decision and a response to the clarification of the contractual limitation provision filing deadline. LINA responded by stating that it would make a decision "as soon as possible."

53. By letter dated March 3, 2020, Ms. Bradburn again objected to LINA's continued extension requests as unjustified and unreasonable, as it had been well over ninety days since Ms. Bradburn's appeal had been submitted. In this letter, Ms. Bradburn reiterated her requests from May 6, 2019, and January 31, 2020, regarding LINA's interpretation of the contractual limitation period deadline—to which no response had been received.

**54.** On March 6, 2020, LINA notified Ms. Bradburn that it was once again requiring an extension to render an appeal decision, this time in order to refer Ms. Bradburn's claim file to its Vocational department for a Transferable Skills Analysis**.** In this letter, LINA also responded to Ms. Bradburn's request for information regarding LINA's interpretation of the contractual limitation period deadline by misrepresenting that because, "this claim is not subject to new disability standards and the applicable ERISA claim regulations do not require LINA to calculate an expected limitations expiration date for this claim," LINA owed no duty to provide such information, despite the fiduciary duties owed.

**55.** Ms. Bradburn responded to this letter on March 13, 2020, indicating she believed her administrative remedies had been exhausted as it had been over 141 days since LINA received Ms. Bradburn's appeal and not only was there no decision, LINA was informing her that it intended to take even longer to complete a task that should have been completed months ago.  Ms. Bradburn

8

further explained to LINA that its response to her contractual limitation period deadline questions was severely lacking as LINA certainly has a fiduciary duty to act in her best interest at all times, which includes providing her with information about her rights to filing a civil action regarding this claim.

56. Ms. Bradburn has exhausted all required administrative remedies and is entitled to seek the relief requested in this Complaint.

57. The required internal appeal process is "deemed exhausted."

58. Since originally filing her claim for LTD benefits, Ms. Bradburn has been and remains disabled as a result of Injury or Sickness as the Policy define those terms.

59. Ms. Bradburn has satisfied all conditions precedent to receiving benefits under the Policy.

60. Ms. Bradburn is entitled to LTD benefits under the Policy since her benefits were terminated on May 4, 2019, and they are due and owing through the date of judgment and through the maximum benefit periods of the Policy.

**E.    LINA's Adverse Decisions Are Not Entitled to Deference**

61. LINA's termination of Ms. Bradburn's benefits was not substantially justified, were arbitrary and capricious, were unsupported by substantial evidence, constituted abuses of any discretion allowed, and were wrongful under the circumstances.

62. In terminating Ms. Bradburn's benefits and failing to make a timely decision regarding her internal appeal, LINA failed to timely review and consider Ms. Bradburn's testimonial letters describing her symptoms, letters from her friends and family describing their observations of her subjective symptoms, information describing her medical conditions, medical records, claim forms and opinion letters from Ms. Bradburn's doctors that verified her disability, functional capacity test results and vocational evaluations, among other evidence contained within the claim file proving Ms. Bradburn's disability.

63. In terminating Ms. Bradburn's benefits and failing to make a timely decision regarding her internal appeal, LINA relied exclusively on the opinions of its employed or contracted medical and vocational reviewers.

64. LINA's termination decision is contrary to the preponderance of the evidence in the file, including the opinions of her treatment providers, the valid test results of functional capacity evaluations, the results of a vocational evaluation and the support letters from family and friends.

65. LINA's failure to perform a full and fair review of Ms. Bradburn's claim was the result of a conflicted claim process and is therefore not entitled to deference.

**F.   LINA's Pattern and Practice of Violating the ERISA Regulations and Terms of the Plan**

66. The ERISA regulations provide that the plan administrator shall notify a claimant of the plan's benefit determination not later than 45 days after receiving the claimant's request for review. 29 C.F.R. §2560.503-1(i)(1)(i) and (i)(3)(i).

67. An administrator is only permitted to request an additional 45 days to render an internal appeal determination when "special circumstances," such as the need for a hearing, prevent a decision from being rendered within the initial 45-day period.

68. The LTD Policy includes an "Amendatory Rider – Claim Procedures Applicable to Plans Subject to [ERISA]," which states, "The Insurance Company has …45 days…from the date it receives a request to review the claim and provide its decision."

69. The LTD Policy only provides LINA with more than 45-days to review the claim "under special circumstances."

70. LINA's May 2, 2019 adverse benefit determination was based in whole or in part on medical judgments.

10

71. LINA was required by the ERISA Regulations to consult with a health care professional who has appropriate training and experience in the field of medicine as part of the internal appeal process.

72. During the internal appeal process, LINA had control over arranging consultations with the appropriate health care professionals and ensuring such consultations were completed in a timely manner.

73. LINA's failure to consult with the appropriate health care professionals in a timely manner did not constitute a special circumstance authorizing an additional 45-days to render the appeal decisions.

74. As of March 13, 2020, no appeal decision was rendered within either the initial 45-days nor within the first 90 days (if special circumstances exist) as required by ERISA.

75. Upon information and belief, the majority of LINA's decisions on internal appeals submitted by insureds are not rendered within 45 days of receiving the appeal.

76. LINA's pattern and practice of not rendering timely appeal decisions is due in part to a defective claim and internal appeal process or is intentional.

### III.   CLAIM FOR RELIEF
### (Claim for Relief Under ERISA Section 502(a))

77. Ms. Bradburn incorporates herein all allegations contained in this Complaint.

78. Ms. Bradburn brings this action under ERISA Section 502(a), which, among other remedies provides her with a right to file a civil action to recover benefits due under the Policy and Plan, to enforce her rights under the Policy and Plan, and/or to clarify her right to future benefits under the Policy and Plan. See ERISA Section 502(a)(1)(b), 29 U.S.C. § 1132 (a)(1)(b).

79. The evidence presented to LINA establishes that Ms. Bradburn has been continuously disabled under the terms of the Policy from the date benefits began through present.

80. At all relevant times, Ms. Bradburn is and has been entitled to LTD benefits under the Plan and Policy.

81. Defendant ignored and/or unreasonably discredited information supporting Ms. Bradburn's entitlement to LTD benefits under the Policy.

82. By the acts and omissions described herein, and through others likely to be uncovered through discovery, Defendant breached the terms of the Policy.

83. As a direct and proximate result of Defendant's breach, Ms. Bradburn has been denied benefits due to her under the LTD Policy since her benefits were terminated on May 4, 2019.

84. Ms. Bradburn brings this action to recover past-due LTD benefits (with interest) retroactive to May 4, 2019 (the date LINA ceased paying her LTD benefits) and to obtain clarification of her rights to future LTD benefits.

85. Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Ms. Bradburn may bring a civil action to enjoin any act or practice that violates ERISA or the terms of the Plan.

86. Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Ms. Bradburn may bring a civil action to obtain other appropriate equitable relief to redress LINA's violations of ERISA and the Policy, or to enforce any provision of ERISA or the terms of the Policy.

87. By repeatedly violating multiple provisions of ERISA and the terms of the Policy, Defendant knew or should have known it could cause irreparable financial harm to Ms. Bradburn.

88. Defendant is a fiduciary of the Plan for purposes of ERISA Section 402(a)(1) with authority to control and manage the operation and the administration of the Plan and Policy.

89. By delaying payment of compensable claims, while simultaneously earning substantial interest and/or return on equity from the unpaid benefits, Defendant placed its financial interests ahead of Ms. Bradburn's and received financial benefits at her expense.

90. By the acts and omissions described throughout this Complaint, and through others likely to be learned through discovery, Defendant forced Ms. Bradburn to incur significant attorneys' fees.

91. By the acts and omissions described throughout this Complaint, and through others likely to be learned through discovery, Defendant denied Ms. Bradburn of a full and fair review of her claims and appeals.

92. As a Plan fiduciary, Defendant owes Ms. Bradburn an equitable duty to remedy and compensate her for the losses they caused her to suffer and when LINA breached its fiduciary obligations.

93. Under 29 U.S.C. § 1132(a)(3), Ms. Bradburn is entitled to equitable relief for the separate and distinct harms she suffered from Defendant's violations of ERISA and the Plan, and such equitable relief includes the following:

a. Acceleration—an action advancing the breaching party's obligations under a contract—is an equitable remedy available under 29 U.S.C. § 1132(a)(3)

b. Accounting for profits—an action for equitable relief against a person in a fiduciary relationship to recover profits taken in a breach of the relationship—is an equitable remedy available under 29 U.S.C. § 1132(a)(3);

c. Disgorgement—an action seeking to have the court compel LINA to return improperly gained profits—is an equitable remedy available under 29 U.S.C. § 1132(a)(3);

d. Injunctive relief is an equitable remedy available under 29 U.S.C. § 1132(a)(3).

e. Restitution—an action seeking an award of damages against a defendant that has been unjustly enriched at the Plaintiff's expense—is an equitable remedy available under 29 U.S.C. § 1132(a)(3); and

  f. Surcharge—an award of money damages imposed on a fiduciary for breach of duty—is an equitable remedy available under 29 U.S.C. § 1132(a)(3).

  94. Ms. Bradburn also seeks to recover all awardable interest, attorneys' fees, and costs under 29 U.S.C. § 1132(g).

**WHEREFORE**, Plaintiff, Jessica Bradburn, requests the Court to enter judgment in her favor and against Defendant, LINA, as follows:

a) Declare that Plaintiff is disabled within the meaning of the Policy and is entitled to LTD benefits under the Plan and the Policy;

b) Order LINA to pay Ms. Bradburn all past-due benefits under the Policy from the date they became due through the date of judgment, together with interest (both statutory and moratory) on each monthly payment from the date it became due through the maximum benefit period of the Policy;

c) Determine and then declare that Ms. Bradburn is entitled to receive LTD benefits under the Policy for as long as she continues to meet the terms and conditions in the Policy for receipt of such benefits;

d) Order LINA to pay Ms. Bradburn the costs of the suit herein, including reasonable attorneys' fees, under ERISA Section 502(g)(1), 29 U.S.C. § 1132(g);

e) Provide such other and further equitable relief as this Court deems just and proper under 29 U.S.C. § 1132(a)(3), including without limitation the equitable remedies of surcharge, disgorgement, injunctive relief, unjust enrichment, restitution, and/or accounting, in amounts to be proven.

Respectfully submitted this 18th day of March 2020, by:

          MCDERMOTT LAW, LLC

          *s/ Timothy M. Garvey*
          _____
          Shawn E. McDermott, #21965
          Timothy M. Garvey, #42668
          4600 S. Ulster Street, Suite 800
          Denver, CO 80237
          (303) 964-1800
          (303) 964-1900 (fax)
          *shawn@mcdermottlaw.net*
          *tim@mcdermottlaw.net*

<u>Plaintiff's Address</u>:
366 South Tejon Lane
Pueblo, CO 81007